IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.
_____

**CHARLIE GRANDT**,

      Plaintiff,

v.

**COLORADO SPRINGS ORAL AND FACIAL SURGERY CENTER, PLLC
d/b/a ORAL SURGERY SPECIALISTS OF PUEBLO**, and
**DENTAL CARE ALLIANCE, LLC**

      Defendants.

---

## COMPLAINT

---

COMES NOW, Plaintiff Charlie Grandt, and for her Complaint against the Defendants, alleges the following:

### Introduction

1. Plaintiff Charlie Grandt is a former employee of Defendants Colorado Springs Oral and Facial Surgery Center, PLLC d/b/a Oral Surgery Specialists of Pueblo and Dental Care Alliance, LLC. Ms. Grandt asserts that during her employment, she was subjected to discrimination because of her gender, harassment because of her gender, and that her employment was terminated in retaliation for her opposition to gender discrimination and harassment. Ms. Grandt brings this proceeding for damages to redress violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, for gender discrimination and retaliation. After her employment was terminated, Ms. Grandt learned that Defendants had claimed they terminated her employment because of her lawful off-duty activities. Therefore, Ms. Grandt asserts a claim

1

for wrongful termination in violation of Colorado's Lawful Off-duty Activities Statute, C.R.S. § 24-34-402.5.

## Jurisdiction

2. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 & 1343, and 42 U.S.C. § 2000e-5.  By virtue of the Court's original jurisdiction over Ms. Grandt's Title VII claims, this Court has supplemental jurisdiction over her state law claim pursuant to 28 U.S.C. § 1367.

## Venue

3. The unlawful employment actions described below were committed in Pueblo County in the state of Colorado.

4. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## Parties

5. Charlie Grandt is a resident of Pueblo West, Colorado and is a former employee of Oral Surgery Specialists of Pueblo and Dental Care Alliance, LLC where she worked as the office manager.

6. Colorado Springs Oral and Facial Surgery Center, PLLC d/b/a Oral Surgery Specialists of Pueblo ("OSS") is a Colorado professional limited liability company that does business in Pueblo, Colorado.

7. Dental Care Alliance ("DCA") is a Florida limited liability company authorized to do business in the state of Colorado.

## General Allegations

8. All prior allegations are incorporated herein.

9. Defendant OSS is an oral and maxillofacial surgery practice in Pueblo, Colorado that provides medical services including: dental implants, wisdom teeth removal, bone grafting, and oral pathology.

10. OSS is a dental medicine practice owned by doctors who work in the practice.

11. Defendant DCA bills itself as a "dental support organization" that provides human resources, payroll, and benefits services to dental practices around the country.

12. OSS contracts with DCA for the provision of human resources, payroll, and benefits services.

13. DCA provides OSS with the contracted-for services from a location outside of Colorado.

14. Plaintiff Charlie Grandt is a woman.

15. Ms. Grandt was hired to work for OSS on or about June 6, 2017.

16. At all times relevant to this Complaint, Ms. Grandt worked for Defendants as OSS's office manager.

17. In her daily work, Ms. Grandt was subject to supervision, direction, and control by the OSS doctors.

18. OSS doctors assigned work to Ms. Grandt.

19. OSS doctors directed Ms. Grandt in the performance of her duties.

20. OSS doctors supervised Ms. Grandt's work in the office.

21. Ms. Grandt's work was also subject to supervision, direction, and control by DCA managers.

22. DCA managers set work policies for Ms. Grandt and other workers in OSS's office.

23. DCA managers also supervised the work Ms. Grandt performed.

24. There were no DCA managers regularly working on-site at OSS's office.

25. In addition to working as OSS's office manager, Ms. Grandt also assisted the doctors with surgical procedures.

26. DCA did not supervise or direct Ms. Grandt when she was assisting with surgical procedures.

27. Ms. Grandt was jointly employed by OSS and DCA.

28. Throughout her employment, Ms. Grandt was qualified to perform the duties of her position.

29. Throughout her employment, Ms. Grandt satisfactorily performed the duties of her position.

30. During her employment, Ms. Grandt received pay increases.

31. From February 2019 to February 2020, Ms. Grandt's pay was increased by over 54%.

32. Ms. Grandt's pay was increased in recognition of her satisfactory performance of her duties.

33. At all times relevant to this Complaint, all of the doctors who worked at the OSS office were men.

34. One of the doctors who worked in the OSS office was Dr. Ben Bailey.

35. Dr. Bailey is a man.

36. During Ms. Grandt's employment, Dr. Bailey routinely behaved in a manner that was abusive to female patients and staff.

37. Dr. Bailey would regularly make verbally abusive comments to female employees.

38. Dr. Bailey would slam doors out of anger or frustration with female employees.

39. Dr. Bailey would throw dental or surgical instruments out of anger or frustration with female employees.

40. Ms. Grandt observed Dr. Bailey throwing sharp instruments in the direction of a female employee during a surgical procedure.

41. Dr. Bailey would regularly direct inappropriate language at female employees.

42. A female patient who had a negative experience with Dr. Bailey paid for her services by check and wrote in the memo line: "Dr. Bailey- Biggest piece of trash ever."

43. Ms. Grandt witnessed Dr. Bailey forcibly slap a female patient across the face while she was under anesthesia.

44. Ms. Grandt never observed Dr. Bailey slap a male patient.

45. Dr. Bailey made derogatory comments about the physical appearance of female patients.

46. Ms. Grandt never heard Dr. Bailey make derogatory comments about the physical appearance of male patients.

47. Dr. Bailey made abusive comments to female employees that questioned their competence or intelligence, including calling staff stupid.

48. Ms. Grandt never heard Dr. Bailey question the competence or intelligence of any men.

49. Dr. Bailey's behavior toward female employees and mistreatment of them caused some of them to break down crying at work.

5

50. Many of the female employees at OSS went to Ms. Grandt to complain about his abusive behavior toward them.

51. In August 2019, a female employee complained to Ms. Grandt about the way Dr. Bailey was treating her.

52. Also in August 2019, the female employee who had complained to Ms. Grandt also complained to Dr. Eric Ringer, another doctor employed by OSS, about how she was being treated by Dr. Bailey.

53. Dr. Eric Ringer communicated to Ms. Grandt that the female employee had complained to him about Dr. Bailey and then Dr. Eric Ringer asked Ms. Grandt for information about Dr. Bailey's treatment of the employee.

54. After communicating with Dr. Eric Ringer about Dr. Bailey's treatment of the female employee, Ms. Grandt met with Dr. Bailey to discuss his behavior toward the female employees.

55. Dr. Bailey's behavior toward the female employees did not improve after Ms. Grandt met with him in August 2019.

56. In November 2019, the same female employee who had complained about Dr. Bailey in August 2019, complained again to Ms. Grandt.

57. In November 2019, the female employee, who was pregnant, informed Ms. Grandt that Dr. Bailey had told a little boy to punch the female employee in the stomach and then laughed until the little boy's mother gave Dr. Bailey a disapproving look.

58. After Ms. Grandt received multiple complaints about Dr. Bailey's abusive behavior toward female employees, she scheduled a meeting between the employees and Dr.

Bailey to address his actions and behaviors that were making the employees feel uncomfortable and threatened.

59. The meeting did not result in any changes to Dr. Bailey's behavior toward the staff.

60. On another occasion after the meeting that failed to address Dr. Bailey's behavior, Ms. Grandt sat down with Dr. Bailey to discuss his harassing behavior toward the female employees and how it was having a negative impact on the employees and on employee morale.

61. Dr. Eric Ringer was aware that the female employees were complaining about Dr. Bailey and that Ms. Grandt was meeting with Dr. Bailey about his behavior toward the female employees.

62. Ms. Grandt's efforts did not result in any improvement in Dr. Bailey's behavior.

63. Despite Dr. Eric Ringer's knowledge of the complaints by female employees about how they were treated by Dr. Bailey, he took no action to stop Dr. Bailey from mistreating or abusing the employees.

64. Throughout the last year of her employment, Dr. Bailey subjected Ms. Grandt to a hostile work environment because of her gender.

65. On most of the workdays over Ms. Grandt's last year of employment, Dr Bailey called her a "fucking bitch."

66. Dr. Bailey called Ms. Grandt a "fucking bitch" because of her gender.

67. In June 2020, Dr. Bailey called Ms. Grandt a "cunt."

68. Dr. Bailey called Ms. Grandt a "cunt" because of her gender.

69. Ms. Grandt complained to Dr. Eric Ringer about Dr. Bailey calling her a "cunt."

7

70. Defendants took no action in response to Ms. Grandt's complaint to Dr. Ringer that Dr. Bailey had called her a "cunt."

71. Between June 2020 and the last day of her employment, Dr. Bailey continued to call Ms. Grandt a "fucking bitch."

72. Ms. Grandt made repeated complaints to the other doctors at OSS about Dr. Bailey's behavior and how he treated her and the other female employees.

73. Defendants never took any action to stop Dr. Bailey from harassing Ms. Grandt or the other female employees.

74. In August 2020, Ms. Grandt observed Dr. Bailey slap a sedated patient across the face, purportedly to wake her up from anesthesia.

75. After Ms. Grandt observed Dr. Bailey slap the patient's face, she confronted him about his inappropriate behavior.

76. In response to being confronted by Ms. Grandt about slapping the patient across the face, Dr. Bailey said the following to Ms. Grandt: "I just want to take out to a field and murder you!"

77. In response to being confronted by Ms. Grandt about slapping the patient across the face, Dr. Bailey slammed a door in Ms. Grandt's face.

78. Because of Dr. Bailey's past abusive behavior toward female patients, female employees, and Ms. Grandt herself, Dr. Bailey's threat of physical violence made Ms. Grandt fearful for her safety.

79. The conduct Ms. Grandt was subjected to, including the use of gender-specific epithets such as "fucking bitch" and "cunt," and the threat of violence against her, occurred because of her gender.

8

80. The conduct Ms. Grandt was subjected to, including the use of gender-specific epithets such as "fucking bitch" and "cunt," and the threat of violence against her, was unwelcome and unsolicited.

81. The conduct Ms. Grandt was subjected to, including the use of gender-specific epithets such as "fucking bitch" and "cunt," and the threat of violence against her, was offensive to Ms. Grandt and would be offensive to a reasonable person.

82. The conduct Ms. Grandt was subjected to, including the use of gender-specific epithets such as "fucking bitch" and "cunt," and the threat of violence against her, altered the terms and conditions of Ms. Grandt's employment and created a hostile work environment because of her gender.

83. After Dr. Bailey slammed the door in her face and threatened Ms. Grandt with physical violence, Ms. Grandt contacted Defendants, including the DCA regional manager over OSS, to make a complaint about the hostile work environment at OSS.

84. After Ms. Grandt made her complaint to Defendants about Dr. Bailey, his behavior toward her did not change.

85. After Ms. Grandt made her complaint to Defendants about Dr. Bailey, he continued to subject Ms. Grandt to verbal abuse and harassment.

86. Within days after reporting Dr. Bailey's harassing behavior to Defendants, Ms. Grandt was told that her employment was terminated.

87. Defendants terminated Ms. Grandt's employment in late August 2020.

88. When Ms. Grandt was told that her employment was terminated, she was told that she was being terminated because she had solicited complaints from other employees in the OSS office about Dr. Bailey's harassing behavior.

9

89. The statement that Ms. Grandt solicited complaints from other employees about Dr. Bailey's harassing behavior is false.

90. Ms. Grandt did not solicit complaints from other employees about Dr. Bailey's harassing behavior; rather, other employees made complaints to Ms. Grandt about Dr. Bailey and Ms. Grandt reported those complaints to Defendants.

91. When Ms. Grandt reported harassment complaints made against Dr. Bailey by other employees, she was engaged in protected opposition to discrimination.

92. If Ms. Grandt would have solicited complaints from other employees about Dr. Bailey's harassing behavior, that conduct would have been protected opposition to discrimination.

93. Whether Defendant fired Ms. Grandt because of the actual complaints she made, or because of Defendant's misperception that Ms. Grandt was soliciting complaints from other employees, Defendant's decision to terminate Ms. Grandt was made because of her opposition to discrimination.

94. Ms. Grandt's employment was terminated in retaliation for her opposition to, and reporting of, gender discrimination and harassment.

95. After Ms. Grandt was terminated, Defendants hired a man to replace her.

96. Defendants' decision to terminate Ms. Grandt's employment was motivated by, or was made because of, Ms. Grandt's gender.

97. On July 28, 2021, Defendants submitted a position statement to the U.S. Equal Employment Opportunity Commission in response to Ms. Grandt's Charge of Discrimination.

98. Ms. Grandt received a copy of Defendant's position statement on or about July 30, 2021.

99. In the position statement, Defendants asserted that Ms. Grandt's employment was terminated in part because Ms. Grandt hosted a party in her house attended by coworkers and friends.

100. Prior to receiving Defendants' position statement, Ms. Grandt had no knowledge that Defendants had allegedly terminated her employment because she hosted a party in her house that was attended by coworkers and friends.

101. Ms. Grandt learned for the first time on or about July 30, 2021 that Defendants were relying on her off-duty conduct as a purported basis for her termination.

102. The party Ms. Grandt hosted at her house took place off-duty.

103. The party that Ms. Grandt hosted at her house took place away from Defendants' premises.

104. The party that Ms. Grandt hosted at her house was a lawful gathering of adults who were associating for social purposes.

105. Defendants terminated Ms. Grandt's employment because of her lawful off-duty activity.

106. Defendants' discriminatory and retaliatory treatment of Ms. Grandt caused her to suffer a great deal of emotional distress and significant economic and non-economic losses.

### First Claim for Relief—Title VII Hostile Work Environment
(Against All Defendants)

107. Plaintiff realleges all prior paragraphs and incorporates them herein.

108. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

109. Plaintiff is a woman and thus a member of a protected class under 42 U.S.C. § 2000e, *et seq.*

110. Defendants discriminated against Plaintiff because of her gender in violation Title VII by engaging in, tolerating, or failing to prevent the gender-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

111. Defendants have denied Plaintiff the protections against gender discrimination provided by Title VII in the terms and conditions of her employment.

112. During Plaintiff's employment she was subjected to offensive and unwelcome comments based on her gender.

113. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

114. This conduct and other incidents of harassment described above were because of Plaintiff's gender.

115. The conduct suffered by Plaintiff was sufficiently pervasive or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

116. Plaintiff was detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable person in Plaintiff's position.

117. Defendants knew or should have known of the harassment described herein and Dr. Bailey's propensity to engage in such gender-based harassment and failed to implement prompt and appropriate corrective action.

118. Defendants are vicariously liable to Plaintiff for the acts of harassment committed against her by Dr. Bailey.

119. As a consequence of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

120. The harassment directed at Plaintiff was either intended to cause her emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to Defendant's conduct.

121. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Plaintiff.

## Second Claim for Relief—Title VII Retaliation
**(Against All Defendants)**

122. Plaintiff realleges all prior paragraphs and incorporates them herein.

123. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

124. Plaintiff engaged in protected activity when she opposed discrimination on behalf of herself and other female employees.

125. Plaintiff's protected activity consisted of multiple good faith internal complaints of gender discrimination and harassment.

126. Plaintiff was subjected to a materially adverse action—the termination of her employment.

127. Plaintiff was subjected to the materially adverse action because of her protected activity opposing discrimination.

128. As a consequence of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

129. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Plaintiff.

### Third Claim for Relief—Title VII Discrimination
(Against All Defendants)

130. Plaintiff realleges all prior paragraphs and incorporates them herein.

131. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

132. As a woman, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended.

133. Plaintiff was subjected to adverse treatment in the terms and conditions of her employment because of her gender, including but not limited to disparate treatment and discriminatory terms and conditions of employment as described above, and the termination of her employment.

134. At all pertinent times, Plaintiff performed the functions of her job competently and was more than qualified for the position she held.

135. Despite Plaintiff's qualifications, Defendant subjected her to discrimination because of her gender.

136. Defendant's asserted reasons for the employment actions Plaintiff suffered were pretext for illegal gender discrimination.

137. Plaintiff's gender was a motivating factor in Defendant's discrimination against her.

138. Alternatively, Plaintiff's gender was the cause of Defendant's discrimination against her.

139. As a consequence of Defendant's illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.

140. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, and was the proximate cause of significant injuries, damages, and losses incurred by Plaintiff.

### Fourth Claim for Relief—Violation of C.R.S. § 24-34-402.5
### (Against All Defendants)

141. Plaintiff realleges all prior paragraphs and incorporates them herein.

142. Plaintiff was employed by Defendants.

143. While employed by Defendants, Plaintiff engaged in lawful activities off Defendants' premises during non-working hours, specifically by hosting a party at her house attended by coworkers and friends.

144. In late August 2020, Defendants terminated Plaintiffs employment.

145. When Defendants terminated Plaintiffs employment, Defendants told Plaintiff she was terminated for soliciting complaints from coworkers about the harassment they had been subjected to by Dr. Bailey.

146. When Defendants terminated Plaintiff's employment, they provided her with no information that would have put her on notice that her employment was being terminated because of the party she hosted at her house.

147. On or about July 30, 2021, Plaintiff learned for the first time that Defendants had told the U.S. Equal Employment Opportunity Commission that Plaintiff's employment was terminated in part because of her hosting a party at her home.

148. Defendants, by their own admission, terminated Plaintiff's employment because she engaged in lawful activities off of Defendants' premises during non-working hours.

149. The termination of Plaintiff's employment was in violation of C.R.S. § 24-34-402.5.

150. As a result of the termination of her employment, Plaintiff has been deprived of wages and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, pursuant to 42 U.S.C. §§ 1981a, 1988, 2000e-5(g), C.R.S. § 24-34-402.5, and Fed. R. Civ. P. 54:

a. Nominal damages;

b. Nonpecuniary and compensatory damages, including damages for emotional distress and consequential damages;

c. Punitive damages;

d. An order reinstating Plaintiff;

e. Back pay, including loss of benefits and seniority, or front pay in lieu of reinstatement;

f. A declaration that Defendants' conduct violated Plaintiff's rights under Title VII;

g. Pre- and post-judgment interest at the highest rate allowed by law;

h. Costs and reasonable attorneys' fees pursuant to Fed. R. Civ. P. 54, C.R.S. § 24-34-402.5, and 42 U.S.C. § 1988; and

i. All other legal or equitable relief to which Plaintiff is entitled.

## JURY DEMAND

**Plaintiffs request this matter be tried by a jury.**

Respectfully submitted this 28th day of July, 2023.

CORNISH & DELL'OLIO, P.C.

                                s/Ian D. Kalmanowitz
                                Ian D. Kalmanowitz, # 32379
                                Cornish & Dell'Olio, P.C.
                                431 N. Cascade Avenue, Ste. 1
                                Colorado Springs, CO 80903
                                Telephone:  (719) 475-1204
                                Fax:  (719) 475-1264
                                Email:  ikalmanowitz@cornishanddellolio.com
                                Attorneys for Plaintiff

Plaintiff's Address:

758 S. Palomar Place
Pueblo West, CO 81007